INCE *v.* STATE.

Opinion delivered January 20, 1906.

1. CRIMINAL PROCEDURE—MOTION IN ARREST OF JUDGMENT.—A motion in arrest of judgment in a murder case does not lie upon the ground that the indictment charges more than one offense; Kirby's Digest, § 2427, providing that "the only ground upon which a judgment shall be arrested is that the facts stated in the indictment do not constitute a public offense within the jurisdiction of the court." (Page 428.)

2. SAME—HOW MISJOINDER OF OFFENSES AVAILED OF.—Objection that an indictment for murder improperly joins several offenses must be raised by demurrer before trial and verdict, so that the court may either quash the indictment or compel the State to elect upon which count it will proceed. (Page 428.)

3. EXPERT WITNESS—FORM OF HYPOTHETICAL QUESTION.—An hypothetical question addressed to an expert witness need not embrace all the facts which the testimony tends to prove. (Page 429.)

4. SAME—EXAMINATION—DISCRETION OF COURT.—The form of hypothetical questions addressed to expert witnesses is, to some extent, within the discretion of the trial court, which may, on the one hand, prevent a particular fact or the testimony of a particular witness from being singled out and emphasized, or, on the other hand, may exclude facts not within the probable range of the evidence. (Page 429.)

5. EVIDENCE—CONFESSION.—On the trial of an uxoricide, whose defense was insanity, the admission in evidence of a confession by him. which tended to prove a motive for the crime was not erroneous, the confession being admissible to determine his mental capacity, and whether or not he committed the crime. (Page 430.)

Appeal from Yell Circuit Court; WILLIAM L. MOOSE, Judge; affirmed.

*S. T. Poe* and *J. H. Carmichael,* for appellant.

1. The evidence was not sufficient to sustain the verdict. The testimony of experts establishes the insanity of defendant at the time the murders were committed. Test by which to distinguish between the homicidal maniac and the murderer: Ray's Med. Jur. 224. See also 3 Witthaus & Becker on Med. Jur. 276; *Ib.* 247; *Ib.* Melancholia, 233; Reese, Med. Jur. (3 Ed.), 604; 5 Pepper's System of Med., 147. If a reasonable doubt exists as to the sanity of the person, he should be acquitted. 75 N. Y. 159; 116 Ill. 555. As to non-expert testimony on questions of insanity, see 61 Ark. 241.

2. Hypothetical questions must be based upon facts admitted or established, or which the jury might legitimately find on weighing the evidence, and a fair statement of all material facts must be given in the questions. 97 N. Y. 501. An expert who has heard all the evidence should not be asked to give his opinion upon it as to the defendant's sanity or insanity. 56 Ark. 402; 1 Greenl. Ev., 16 Ed. § 441, and note.

3. The testimony of witness Tatum as to conversation with defendant relative to the insanity of defendant's father and sister was incompetent and irrelevant, and should have been excluded. 56 Ark. 345; 66 Ark. 499; 110 U. S. 574.

4. The indictment was void, in that it charges four separate murders in the same indictment. Kirby's Digest, § § 2230, 2231; 32 Ark. 203; 38 Ark. 555.

*Robert L. Rogers, Attorney General,* for appellee.

1. The presumption of defendant's sanity was not overcome by the evidence tending to show insanity. The execution of a well-defined plan to murder and his attempt to conceal the crime and to escape indicate sanity. In the absence of other testimony tending to show insanity at the time the crime was committed, evidence that his father and sister were insane should not be con-

sidered. 31 Ind. 492; 1 Clevenger's Med. Jur. Ins. 90. His plea of insanity was submitted to the jury under proper instructions.

2. The indictment was not void. It could have been quashed, if demurrer had been interposed at the proper time, or the State required to elect upon which count it would rely. Kirby's Digest, § 2286; *Ib.* 2229; 151 U. S. 396; 34 Ark. 433.

McCULLOCH, J. After this case was reversed and remanded for a new trial, it was removed on change of venue, to the circuit court of Yell County for the Dardanelle District, where the defendant was put upon trial at the September term, 1905, and was convicted of murder in the first degree.

Before sentence was ·pronounced, the defendant filed and presented a motion in arrest of the judgment on the alleged ground that "the indictment upon which the defendant was tried was and is void." The statute provides that "the only ground upon which a judgment shall be arrested is that the facts stated in the indictment do not constitute a public offense within the jurisdiction of the court." Kirby's Digest, § 2427. The indictment contains four counts charging the defendant separately with the murder of his wife, Frances Ince, and children, William Ince, Annie Ince and James Ince. It is contended on behalf of appellant that, more than one offense being charged in the indictment, contrary to the terms of the statute, it is void, and does not sustain the conviction. The statute is as follows: "An indictment, except in cases mentioned in the next section, must charge but one offense, but, if it may have been committed in different modes and by different means, the indictment may allege the modes and means in the alternative." Kirby's Dig. § 2230. The next succeeding section provides what offenses may be joined in an indictment, and does not mention any of the degrees of homicide. Improper misjoinder of separate offenses in an indictment is by the statute made grounds of demurrer, and can only be reached in that way. Kirby's Dig., § 2286; *Pooler* v. *United States,* 127 Fed. 509; *Connors* v. *United States,* 158 U. S. 408; 1 Bishop, Crim. Proc. §§ 443, 447; Clark's Crim. Proc. p. 296; *Cornell* v. *State,* 104 Wis. 527; *Forrest* v. *State,* 13 Lea (Tenn.), 103; *Com.* v. *Monahan,* 170 Mass. 460. The indictment is not void because of the misjoinder, but the objection must be raised before trial and verdict, so that the court may either quash the indictment or com-

pel the State to elect upon which count it will proceed. *Baker* v. *State,* 4 Ark. 56; *State* v. *Jourdan,* 32 Ark. 203; Clark, Crim. Proc. p. 296.

It is next contended that the court erred in permitting the prosecuting attorney to propound to the expert witnesses who testified as to the sanity of defendant hypothetical questions which did not recite all the facts proved. There is not entire accord among the authorities as to the form in which such questions should be put to a witness and the *quantum* of facts to be recited therein. There seems to be some discord on the point whether a party may single out a particular fact proved, or the testimony of a particular witness, and recite it as basis of the hypothetical question, omitting all other facts which the testimony tends to prove; but the doctrine is, we think, established by the decided weight of authority that the question need not embrace all the facts which the testimony tends to prove. The party offering the testimony of the witness may select the undisputed facts or such facts as he conceives to be established by the evidence, and predicate his hypothetical question upon them. Professor Wigmore states the rule thus: "The questioner is entitled to the witness' opinion on any combination of facts that he may choose. It is often convenient, and even necessary, to obtain that opinion upon the state of facts falling short of what he or his opponent expects to prove, because the questioner can not tell how much of the testimony the jury will accept; and if the proof of the whole should fail, still proof of some essential part might be made, and an opinion based on that part is entitled to be provided for the jury. For reasons of principle, then, and to some extent of policy, the rational conclusion would be that the questioner need not cover in his hypothesis the entire body of testimony put forward on that point by him or by the opponent, but may take as limited a selection as he pleases and obtain an opinion on that basis." 1 Wigmore on Evidence, § 682.

The question is, to some extent, within the discretion of the trial court. It may, on the one hand, prevent a particular fact or the testimony of a particular witness being singled out and emphasized, or, on the other hand, may exclude facts not within the probable range of the evidence. 1 Greenleaf on Ev. § 441; 1 Wigmore on Ev. § 682.

The undisputed facts were recited in the questions propounded by the prosecuting attorney, and he was permitted to embrace a recital of additional facts concerning the defendant which the evidence tended to establish. We find no error in this respect.

Error of the court is also assigned in permitting witness W. L. Tatum to testify concerning alleged statements and confessions of the defendant. The defendant, to establish hereditary insanity, introduced testimony showing that his father was insane, and also that his sister was insane and had committed suicide. Witness Tatum testified that defendant told him, while confined in jail awaiting trial for this offense, "that his father never was crazy, but that his grandfather's money sent him to the asylum;" and that he didn't believe his sister was crazy, but "from what he had heard he believed her husband killed her." The witness was also permitted to testify that the defendant while in jail sent for him (witness), and made a full confession of the alleged crime, and subsequent to the first trial made a further confession, stating as his reason for killing his wife that he had served a term in the penitentiary for burglary, and had been guilty of larceny frequently, all of which was known to his wife; that he and his wife didn't get along well together, and she had often threatened to inform upon him, and that he killed her on that account. This testimony was not incompetent. The inquiry was as to the guilt or innocence of the defendant of the crime charged, his sanity and, incidentally, his motive in committing the act. All that he said was competent for the jury to consider in determining his mental condition. His statement of the reasons that he had for killing his wife was competent, so that the jury could judge whether the homicidal act was that of a sane mind prompted by a motive, or the act of a man afflicted with the homicidal mania, as is claimed on behalf of the defendant. His admissions as to the sanity of his father and sister were competent, as tending to contradict the testimony introduced of their insanity. The fact that the mental condition of the defendant is being inquired into, in connection with the other material facts constituting the alleged crime, does not render incompetent his admissions concerning such other facts. They may be considered by the jury, with the other testimony, in order to determine the

mental capacity of the defendant, and whether or not he committed the crime.

Learned counsel urge with much force, both in the oral argument and in their brief, that the verdict is against the weight of the evidence on the question of the defendant's sanity. As we said in the former opinion in this case, the testimony tending to show that the defendant was afflicted with the homicidal mania when he committed the awful deed is quite persuasive. It is difficult to conceive of a sane mind so depraved as to prompt the act committed by the defendant in brutally slaying his wife and helpless infant children, and the testimony of the expert on diseases of the mind tends, with great force, to convince us that it was not the act of a sane person. But the testimony was conflicting, and the jury found against the theory of insanity in any form. It can not be said that the verdict is without evidence to support it, even conceding that it is against the weight of the evidence. For this court in that state of the proof to set aside the verdict would be a clear invasion of the province of the jury. Whatever may be our impressions as to the weight of the evidence, if there is substantial evidence in support of the verdict, it is our plain duty not to disturb it.

Therefore, finding no error in the proceedings, the judgment must be affirmed.

It is so ordered.